CA 07 056 ML

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NEHCEU, DISTRICT 1199<br>Plaintiff,<br><br>v.<br><br>HAVEN HEALTH CENTER OF PAWTUCKET<br>Defendant. | CIVIL ACTION<br>FILE NO. |

**COMPLAINT AND MOTION TO COMPEL COMPLIANCE WITH ARBITRAL SUBPOENA DUCES TECUM**

**Introduction**

This is an action to enforce the Arbitral Subpoena Duces Tecum issued to Haven Health Center ("Haven Health") demanding that it produce any and all medical records pertaining to its residents whom it intends to call as witnesses and those it identified at the arbitration hearing. This matter arises from an arbitration demand filed by NEHCEU, District 1199 (the "Union") against Haven Health. Specifically, the Union filed a grievance on behalf of Annette Gray who Haven Health terminated without just cause.

**Parties**

1. Plaintiff-Union is a labor organization representing health care employees employed by Haven Health as defined by the National Labor Relations Act, 29 U.S.C. §152(5). Members of the NEHCEU include residents of the State of Rhode Island.

2. Defendant-Employer is a health care facility located in Pawtucket, Rhode Island, and is an

employer as defined by the National Labor Relations Act, 29 U.S.C. §152(2)

**Jurisdiction**

3. This Court has original jurisdiction over the claims asserted by Plaintiff in this Complaint and Motion to Compel Compliance With Arbitral Subpoena Duces Tecum pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. §185, and 28 U.S.C. §1331.

**Facts**

4. On or around July 1, 2005, NEHCEU, District 1199, and Haven Health Center entered into a collective bargaining agreement (the "CBA") governing terms and conditions of employment.

5. Article 21 - Section 1 of the CBA provides: "[t]he employer shall have the right to discharge, suspend or discipline any employee for cause." A true and accurate copy of Article 21 is attached hereto as "Exhibit A".

6. Article 23 - Section 1 of the CBA states: "settlement of grievances ... involve the interpretation and application of a specific provision of this agreement." A true and accurate copy of the Article 23(1) is attached hereto as "Exhibit B".

7. Article 24 - Section 1 of the CBA declares "[a] grievance, as defined in Article 23, which has not been resolved thereunder may, within ten (10) working days after completion of Step 3 of the grievance procedure, be referred for arbitration by the Employer or the Union to an arbitrator selected in accordance with the procedures of the American Arbitration Association." A true and accurate copy of the Article 24 is attached hereto as "Exhibit C".

8. Annette Gray was employed by Haven Health Center as a licensed nursing assistant and a med-tech.

9. At all relevant times, Ms. Gray was a member of the Union.

10. Haven Health terminated Ms. Gray without just cause for alleged resident abuse.

11. The Union filed the arbitration demand with the American Arbitration Association on behalf of Ms. Gray because Haven Health violated various articles of the CBA.

12. On October 6, 2006, counsel for Haven Health requested that the Haven Health Center residents (the "residents"), who it will call to testify at the arbitration hearing, do so on Haven Health's premises.

13. At the arbitration hearing on October 10, 2006, the Union argued that it is entitled to examine their medical records to determine if they are competent to testify.

14. The Union also pointed out that Haven Health and its counsel have access to all of the residents' medical records.

15. Haven Health refused to release the residents' medical records without a court order.

16. On November 6, 2006, the Arbitrator signed the Subpoena Duces Tecum demanding that Haven Health produce any and all medical records pertaining to its residents whom it intends to call as witnesses and those it identified at the arbitration hearing on October 10, 2006. A true and accurate copy of the Subpoena Duces Tecum is attached hereto as "Exhibit D".

17. On November 10, 2006, the Union issued the Arbitral Subpoena Duces Tecum to Haven Health's counsel.

18. On November 13, 2006, counsel for the Defendant wrote a letter to Marc B. Gursky, Esq., which advised him that Haven Haven did not intend to produce the residents'

medical records without a court order compelling production and that Haven Health will take all necessary measures to resist production.

19. On November 21, 2006, counsel for the Defendant confirmed with Marc B. Gursky, Esq. that it received the Subpoena Duces Tecum via facsimile on November 10, 2006.

20. On November 30, 2005, Haven Health, by and through its attorneys, filed a Motion to Quash the Arbitral Subpoena Duces Tecum with the American Arbitration Association.

21. On December 15, 2006, the Union, by and through its attorneys, filed a Reply to Haven Health's Motion to Quash with the Arbitrator.

22. On January 5, 2007, counsel for the Defendant wrote a letter to Marc B. Gursky, Esq., informing the Union that it will still need to seek enforcement of the arbitral subpoena duces tecum through court intervention even if the Arbitrator denies Defendant's Motion to Quash.

23. To date, Haven Health has failed to produce <u>any</u> medical records responsive to the Arbitral Subpoena Duces Tecum.

**<u>Cause of Action</u>**

**(Federal Claim - Breach of Contract in Violation of 29 U.S.C. §185)**

24. Plaintiff incorporates Paragraphs 1 through 23 as though fully set forth herein.

25. By the foregoing facts, Defendant breached the CBA.

26. By the foregoing facts, Defendant failed to comply with the Arbitral Subpoena Duces Tecum.

**<u>Cause of Action</u>**

**(Federal Claim - Violation of 9 U.S.C. § 7)**

27. Plaintiff incorporates Paragraphs 1 through 23 as though fully set forth herein.

28. By the foregoing facts, Defendant violated 9 U.S.C. 7 because it failed to comply with the Arbitral Subpoena Duces Tecum.

**Request for Relief**

WHEREFORE Plaintiff, Prays that this Honorable Court:

1. Order Defendant to produce the documents pursuant to the Arbitral Subpoena Duces Tecum within ten (10) days from the date of the said order.
2. Order Defendant to pay Plaintiff's costs and counsel fees associated with said motion.
3. Order such other relief as the Court deems just and proper.

Respectfully submitted,

NEHCEU, District 1199,
By their Attorneys,

Marc B. Gursky, Esq. (#2818)
GURSKY LAW ASSOCIATES
420 Scrabbletown Rd., Ste. C
North Kingston, RI 02852
Tel: (401) 294-4700
Fax: (401) 294-4702

CERTIFICATION

I hereby certify that a true copy of the within document was sent by mail to Rachel V. Kushel, Esq., Durant Nichols Houston Hodgson & Cortese-Costa, P.C., 1057 Broad Street, Bridgeport, CT 06604 on this day 8th of February, 2007.

UNITED STATES DISTRICT COURT CA 07 056 ML

FOR THE

DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NEHCEU, DISTRICT 1199<br>Plaintiff,<br><br>v.<br><br>HAVEN HEALTH CENTER<br>Defendant. | CIVIL ACTION<br>FILE NO. |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH ARBITRAL SUBPOENA DUCES TECUM**

## Introduction

This matter arises from an arbitration filed with the American Arbitration Association (the "AAA") by NEHCEU, District 1199 (the "Union") against Haven Health Center ("Haven Health"). Specifically, the Union filed a grievance on behalf of its member Annette Gray, who Haven Health terminated without just cause for alleged and unsubstantiated resident abuse. Prior to these false allegations, Ms. Gray had twenty-six (26) years of exemplary service at Haven Health as a licensed nursing assistant and med-tech.

## Relevant Provisions

Collective Bargaining Agreement, Article 21:

> The Employer shall have the right to discharge, suspend or discipline any Employee for cause.

Collective Bargaining Agreement, Article 24:

> A grievance, as defined in Article 23, which has not been resolved thereunder may, within ten (10) working days after completion of Step 3 of the grievance procedure, be referred for arbitration by the Employer or the Union to an arbitrator selected in accordance with the procedures of the American Arbitration Association.

## Facts and Travel of the Case

NEHCEU, District 1199, and Haven Health Center are parties to a collective bargaining agreement (the "CBA") governing terms and conditions of employment. Article 21 of the CBA provides: "[t]he employer shall have the right to discharge, suspend or discipline any employee for cause." This dispute over the Arbitral Subpoena Duces Tecum arises from an arbitration grievance involving Haven Health's termination of Ms. Gray without cause.

On October 6, 2006, counsel for Haven Health requested that the Haven Health Center residents (the "residents"), who it will call to testify, do so on Haven Health's premises. At the arbitration hearing on October 10, 2006, the Union argued that it is entitled to examine the residents' medical records to determine if they are competent to testify. The Union made this request because of the residents' advance ages and the fact that they most likely suffer from an assortment of serious medical illnesses, take a multitude of prescription medications, and battle with short-term and long-term memory loss. This medical information is relevant because all of these medical conditions may affect their ability to: (1) perceive; (2) remember; and (3) narrate.

The Union also pointed out that Haven Health has access to all of the residents' medical records. Thus, it can tailor its direct examinations to avoid any pitfalls the residents may come across during their cross-examinations. In the interest of parity the Union should have access to all the residents' medical records.

Haven Health refused release the residents' medical records. As a bases for its refusal, Haven Health claimed that releasing their medical history may subject it to legal liability. Second, Haven Health claimed that its residents should not be subject to any abnormal pre-testimony scrutiny. Lastly, Haven Health erroneously alleged that the Union's motive for obtaining the residents' medical histories was to intimidate them from testifying. However, the Union only seeks this information because it is likely to produce admissible evidence about the residents' mental capacities and competency.

On November 6, 2006, the Arbitrator signed the Arbitral Subpoena Duces Tecum. See Exhibit 1. On November 10, 2006, the Union issued the Arbitral Subpoena Duces Tecum to Haven Health's counsel. The Arbitral Subpoena Duces Tecum demanded that Haven Health produce any and all medical records that pertain to its residents whom it intends to call as a witness and who were identified at the previous arbitration. On November 13, 2006, counsel for the Defendant wrote a letter to Marc B. Gursky, Esq., which advised him that Haven Haven did not intend to produce the residents' medical records without a court order compelling production and that Haven Health will take all necessary measures to resist production. On November 21, 2006, counsel for the Defendant confirmed with Marc B. Gursky, Esq. that it received the Arbitral Subpoena Duces Tecum via facsimile on November 10, 2006.

On November 30, 2005, Haven Health by and through its attorneys filed a Motion to Quash the Arbitral Subpoena Duces Tecum with the Arbitrator. On December 15, 2006, the Union by and through its attorneys filed a Reply to Haven Health's Motion to Quash with the Arbitrator. On January 5, 2007, counsel for the Defendant wrote a letter to Marc B. Gursky, informing the Union that it will still need to seek enforcement of the arbitral subpoena through

court intervention even if the Arbitrator denies Defendant's Motion to Quash.

To date, Haven Health has failed to produce any medical records responsive to the Arbitral Subpoena Duces Tecum.

## Argument

### I. The Court Has Proper Subject Matter Jurisdiction Under Section 301 of the Labor Management Relations Act.

The Court possess proper subject matter jurisdiction in this matter pursuant to federal question jurisdiction. District courts have federal question jurisdiction in cases "arising under the Constitution, laws, or treatises of the United States." 28 U.S.C. §1331. A case arises under federal law if an issue of federal law appears on the face of a well-pled complaint. Metropolitan Life Ins. Co. V. Taylor, 481 58, 63 (1987). However, merely referring to a federal statute ... does not establish federal jurisdiction if the dispute does not involve "a substantial question of federal law." Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 28 (1983).

Section 301 of the Labor Management Relations Act (the "LMRA") confers federal jurisdiction over all suits "for violation of contracts between an employer and a labor organization. See Textile Workers Union v. Lincoln Mills, 353 U.S. 448 (1957). Section 301 also is a source of substantive federal law for the enforcement of collective bargaining agreements. Id. In this case, the Union brought action against Haven Health to compel compliance with an Arbitral Subpoena Duces Tecum. This issue arises from an arbitration proceeding being conducted to enforce the CBA. Article 24 of the CBA grants the Union the right to refer any unresolved grievance to binding arbitration. Moreover, the Union initiated this arbitration proceeding on behalf of Ms. Gray because Haven Health violated Article 21 of the

CBA. Article 21 states "[t]he Employer shall have the right to discharge, suspend or discipline and Employee for cause." Here, Haven Health terminated Ms. Gray based on an unsubstantiated allegation of resident abuse. Consequently, Haven Health violate the CBA and the Union filed an arbitration demand to enforce it.

In conclusion, this matter arises substantial questions of federal law under Section 301 of the LMRA. Substantial questions of federal law arise because the arbitration proceeding directly involves a violation of the CBA and the enforcement of the CBA. Accordingly, the Court has proper subject matter jurisdiction under 28 U.S.C. §1331.

II. The Court Can Compel Compliance With The Arbitral Subpoena Duces Tecum.

An arbitrators may issue a subpoena duces tecum on a party to facilitate the production of documents. The Federal Arbitration Act (the "FAA") explicitly grants arbitrators authority to "summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C §7. The FAA does not explicitly grant arbitrators the power to subpoena the production of documents for inspection by a party prior to a hearing. However, courts have held that an arbitrator implicitly possesses such authority in the interest of efficiency. Sec. Life Ins. Co. of Am. v. Duncanson & Holt (in Re Sec. Life Ins. Co. of Am.), 228 F.3d 865, 870 (8th Cir. 2000) See Wilkes-Barre Publishing Co. v. Newspaper Guild, Local 120, 559 F. Supp. 875, 880 (M.D. Pa. 1982). See also Arbitral Subpoenas Under U.S. Law and Practice, 14 Am. Rev. Int'l Arb. 197 (2003) (an arbitrator may issue judicially enforceable subpoenas duces tecum for the production of documents).

The Supreme Court recognized that federal courts may look to the FAA for guidance in

labor arbitration cases in the wake of its holding in Lincoln Mills. United Paperworkers International Union v. Misco, Inc., 484 U.S. 29, 40 n.9 (1987). This holds true even if the FAA does not directly apply to the collective bargaining agreement in question. American Federation of Television and Radio Artists v. WJBK-TV, 164 F.3d 1004 (6th Cir. 1999). When viewing the FAA for guidance, courts have found that just as the subpoena power of an arbitrator under the FAA extends to parties and documents, a labor arbitrator conducting an arbitration under a collective bargaining agreement should also have the power to subpoena parties and documents. American Federation of Television and Radio Artists, 164 F.3d at 14-5. See also Teamsters Nat'l Auto. Transportes Indus. Negotiating Comm. v. Troha, 328 F.3d 325 (3rd Cir. 2003); Deiulemar Compagnia di Navigazione S.P.A. v. M/V Allegra, 198 F.3d 473 (4th Cir. 1999).

Federal courts possess the power to compel compliance with an arbitral subpoena duces tecum. If a person summoned by an arbitrator refuses or neglects to obey the summons, he may be compelled to appear, or punished for contempt, upon a petition to a federal district court. 9 U.S.C. §7. Accordingly, the FAA in certain situations empowers the court to enforce arbitration subpoenas and subpoena duces tecums. New England Energy, Inc. v. Keystone Shipping Co., 855 F.2d 1, 7 (1st Cir. 1988). Courts also have found that a decision to enforce an arbitrator's subpoena will promote the goals of labor policy if it will foster the effective operation of an arbitration machinery. Id.

Here, Haven Health had amply opportunity to response to the Arbitral Subpoena Duces Tecum. The Union's counsel has made every reasonable effort to obtain the necessary records without court intervention. Haven Health simply refuses to release the records. Since, Haven Health refuses to comply with the Arbitrator's Subpoena Duces Tecum, the Union asks this court

to exercise its authority to compel compliance.

## III. The Court Should Compel Compliance Because the Arbitrator's Decision Warrants Great Deference.

The general rule is that an arbitrator's decision should be upheld "absent a manifest disregard of a contractual provision or a completely irrational result." Rhode Island Brotherhood of Correctional Officers v. State Department of Corrections, 707 A.2d 1229, 1234 (R.I. 1998) (See also Pierce v. Rhode Island Hospital, 875 A.2d 424, 427 (R.I. 2005) (See also Pier House Inn, Inc. v. 421 Corp., 812 A.2d 799, 802 (R.I. 2002). To rise to the level of a manifest disregard, the arbitrator's decision must evince "'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the [CBA].'" Carlsten v. Oscar Gruss & Son, Inc., 853 A.2d 1191, 1195 (R.I. 2004) (quoting Purvis Systems, Inc., 788 A.2d at 1115). See also Wilko v. Swan, 346 U.S. 427 (1953). "As long as an arbitration decision 'draws its essence' from the contract and is based upon a 'passably plausible' interpretation of the contract, it is within the arbitrator's authority and the court's review must end." M&L Power Services, Inc. V. American Networks International, 44 F. Supp. 2d 134, 138 (1st Cir. 1999)(internal citation omitted).

First an arbitrator's decision enjoy a strong presumption of validity because of the "strong public policy in favor of the finality of arbitration [decisions]." Pierce, 875 A.2d at 427 (quoting Prudential Property and Casualty Insurance Co. v. Flynn, 687 A.2d 440, 441 (R.I. 1996). To overturn the Arbitrator's decision absent a manifest disregard of the law would set an unwise precedent repudiating the finality of arbitral decisions. In light of the public policy in favor of the finality of arbitration decisions, the Court should enforce the Arbitral Subpoena Duces Tecum. Moreover, the purpose of binding arbitration is to resolve disputes efficiently and without

litigation. It would be horribly inefficient and litigious to reverse the Arbitrator's decision unless it relied upon either a seriously egregious interpretation of the CBA or an incorrect application of the AAA's rules.

Second, courts give an arbitral decision great deference because the parties contracted to binding arbitration. Based on this same reason, the Court should enforce the Arbitral Subpoena Duces Tecum. Reversing the Arbitrator's decision without the showing of a "manifest disregard of the law" would alter the final and binding nature of the arbitration. Accordingly, the Arbitrator's decision warrants significant deference in order to avoid unnecessary interference with the binding arbitration provision of the CBA.

Third, courts show an arbitrator's decision extreme deference because the parties specifically chose their arbitrator. The Union and Haven Health chose the Arbitrator specifically for her expertise and impartiality. If the parties deemed the Arbitrator fit, then that conclusion commands respect. Moreover, the Arbitrator's expertise and impartiality should be respected. In conclusion, the Court should show great deference to the Arbitrator's decision, and the Court should enforce the Arbitral Subpoena Duces Tecum because there was no egregious application of the CBA or the AAA's rules.

Under this standard of review, the Court should affirm the Arbitrator's decision to grant the Union's Subpoena Duces Tecum because she properly applied the AAA's rules for discovery. The AAA's Employment Arbitration Rules and Mediation Procedures Rule 9 ("Rule 9") gives the Arbitrator the authority to order discovery. Rule 9 states that:

> The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the

expedited nature of arbitration.

Here, Rule 9 allows the Arbitrator to issue the Union's Subpoena Duces Tecum because it is necessary to a full and fair exploration of the issues in dispute. The medical information sought by the Union's Subpoena Duces Tecum is necessary because it is relevant to the competency and credibility of Haven Health's witnesses. Without this information, the Union could not adequately challenge the residents' mental capacities to comprehend what transpired with Ms. Gray. The Union also could not challenge the residents' ability to accurately remember those events. If a resident was unable to understand what happened or accurately remember those events, then the resident is not a competent or credible witness. Thus, the medical records are likely to produce highly relevant and admissible evidence about the appropriate evidential weight the Arbitrator should afford the residents' testimonies, which makes their release necessary to a full and fair exploration of the issues in dispute.

In conclusion, the Court should enforce the Arbitrator's issuance of the Subpoena Duces Tecum. The Arbitrator's decision does not rely upon a "manifest disregard of the law" because the Arbitrator had the authority to compel the discovery of the residents' medical records under Rule 9.

III. The Health Insurance Portability and Accountability Act ("HIPAA") Permits Disclosure in this Matter Because an Employer is Not a Covered Entity and Covered Entities May Make All Disclosures "Required by Law."

In general, HIPPA prohibits covered entities from using or disclosing an individual's protected health information, except as authorized by the individual or as required or permitted by law. 45 CFR §164.502(a). Employers are not covered entities. Id. Even a health care provider, such as Haven Health, is not covered entities when acting in its role as an employer based on the

Department of Health and Human Services' ("HHS") preamble to the HIPAA enabling regulations. 65 FR 82462 (2000).

First, in the preamble, HHS states that the term "health care operations disclosures" permits disclosures to employee representatives for the purposes of grievance resolution. Id. at 82599. HHS also states that *these disclosures include any disclosure to an employee and/or employee representative when the employee needs protected health information to demonstrate that the employer's allegations of improper conduct are untrue.* Id. at 82491. Emphasis added. Therefore, HIPAA does not limit Haven Health's obligation in any way to disclose information relevant to the prosecution of Ms. Gray's grievance.

Second, HHS makes clear that covered entities may make all disclosures that are "required by law," and the definition of that term includes disclosures mandated by the National Labor Relation Act:

> Many federal laws require covered entities to provide specific information to specific entities in specific circumstances. If a federal law requires a covered entity to disclose a specific type of information, the covered entity would not need authorization under §164.508 to make the disclosure because the final rule permits covered entities to make disclosures that are required by law under §164.512(a). Id. at 82485.

In explaining the term "required by law," as presented in the final rule (45 CFR §160.501), HHS states:

> For the purposes of this regulation, 'required by law' means a mandate contained in law that compels a covered entity to make a disclosure of protected health information and that is enforceable in a court of law. Id. at 82497.[1]

Finally, in response to comments regarding whether covered entities must make disclosures under

---

[1]The federal statute must make disclosure mandatory. If the disclosure is mandatory under federal law then the covered entity may disclose the protected health information pursuant to §164.512(a). Id. at 82485.

the NLRA, HHS states "[t]o the extent a covered entity is required by law to disclose protected health information to collective bargaining representative under the NLRA, it may do so without authorization." Id. at 82599. NLRA §§ 158(a)(3) and (5) require an employer to provide a labor organization all relevant information in aid of the labor organizations' exclusive role as a collective bargaining representative. Therefore, HHS makes it clear that even covered entities must disclose protected health information to collective bargaining representatives when relevant to resolving employee grievances.

IV. <u>The Confidentiality Act Permits Disclosure of the Residents' Medical Records Because the Records are Relevant and the Need for the Records Clearly Outweighs the Residents' Privacy Interests.</u>

Section §5-37.3-6.1(d) of the Confidentiality Act allows for the disclosure of the residents' medical records because the information contained within the records is relevant to the arbitration proceeding and the need for this information outweighs the residents' privacy interests. The Confidentiality Act states:

> The court shall grant a motion to quash unless the requesting party can demonstrate that there is reasonable ground to believe the information being sought is relevant to the proceedings, and the need for the information clearly outweighs the privacy interests of the individual.

The residents' medical records are relevant to this arbitration proceeding. Relevant information is "[information] reasonably calculated to lead to the discovery of admissible evidence." Superior Court Rules of Civil Procedure Rule 26(b)(1). The medical records will likely produce admissible evidence about the residents' abilities to stand as witnesses. These medical records will reveal any medical conditions that may impair the residents' ability to correctly understand what transpired, and their ability to accurately remember those events.

Moreover, this evidence is important to this arbitration proceeding because it will shed light on the appropriate evidential weight the Arbitrator should afford the residents' testimonies. Thus, any information the Union obtains through the residents' medical records is relevant, and more importantly, it will have a significant impact on the outcome of this arbitration since Haven Health's case relies entirely on the credibility of these witnesses.

The need for the residents' medical records clearly outweighs their privacy interests. When the residents chose to testify, they placed their mental capacities and competency at issue. Accordingly, the residents' forfeited some of their privacy interests. Furthermore, if a resident felt so strongly about keeping their medical records confidential then he or she could refrain from testifying. Thus, the residents' privacy interest is low. On the other hand, the Union's interest in disclosure is high. The Union could not conduct a fishing expedition into the residents' entire medical histories at the arbitration hearing. It could not repetitively question each and every resident who testifies about every possible medical condition that may effect: (1) their ability to comprehend what happened with Ms. Gray; and (2) the accuracy of their memory.

If the Union can not adequately challenge the residents' mental capacities and competency, then the Arbitrator will be uncertain about the evidential weight to give their testimonies. The Arbitrator would be forced to assume that the residents are competent witnesses, even though they may suffer from medical conditions that severely impair their recollection of the events or their ability to understand what really happened in the first place.

Lastly, in the interest of parity, the Union must be afforded the opportunity to review the residents' medical records before the arbitration hearing. It is unfair for Haven Health to have access to these medical records, but refuse to release them to the Union. With this unfair

advantage, Haven Health can tailor its direct examinations to avoid any competency issues that may develop on the Union's cross-examinations. Thus, the Union will be at an extreme disadvantage without these medical records.

In conclusion, disclosure is proper because the residents' medical records are relevant to this proceedings and the Union's need for this information clearly outweighs the residents' privacy interests.

**Conclusion**

Plaintiff respectfully moves the Court to grant said Motion to Compel Compliance With the Arbitral Subpoena Duces Tecum and that all relevant documents be produced within the next ten (10) days. Plaintiff also moves the Court to order the Defendant to pay Plaintiff's costs and counsel fees associated with said Motion to Compel.

Respectfully submitted,

NEHCEU, District 1199,
By their Attorneys,

Marc B. Gursky, Esq. (#2818)
GURSKY LAW ASSOCIATES
420 Scrabbletown Rd., Ste. C
North Kingston, RI 02852
Tel: (401) 294-4700
Fax: (401) 294-4702

## CERTIFICATION

I hereby certify that a true copy of the within document was sent by first class mail and facsimile to Rachel V. Kushel, Esq., Durant Nichols Houston Hodgson & Cortese-Costa, P.C., 1057 Broad Street, Bridgeport, CT 06604 on this day 8th of February, 2007.