UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NEHCEU, DISTRICT 1199<br>Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 1:07-cv-00056-ML-LDA |
| | : | |
| HAVEN HEALTH CENTER<br>Defendant. | : | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH ARBITRAL SUBPOENA DUCES TECUM**

Defendant, Haven Health Center, ("Haven Health") objects to the motion to compel compliance with arbitral subpoena *duces tecum* of Plaintiff, NEHCEU, District 1199.

For the reasons set forth in the memorandum of law filed in support of this opposition, Haven Health respectfully requests the Court to deny the Plaintiff's motion to compel.

HAVEN HEALTH CARE
By its attorneys,

/s/ Anna M. Piazza
Anna M. Piazza (#7206)
Matthew P. Horvitz (#7289)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600 (FAX)
apiazza@haslaw.com
mhorvitz@haslaw.com

Dated: March 2, 2007.

Stephen M. Sedor, Esq.
Rachel V. Kushel, Esq.
Durant, Nichols, Houston,
Hodgson & Cortese-Costa, P.C.
1057 Broad Street
Bridgeport, CT 06604
(203) 366-3438
(203) 384-0317
ssedor@durantic.com
rkushel@durantic.com

OF COUNSEL

Dated: March 2, 2007.

**CERTIFICATION**

I hereby certify that on March 2, 2007, a copy of the foregoing Opposition was filed electronically with the Court and notice was sent to counsel of record, as listed below, by operation of the Court's electronic filing system.

Marc B. Gursky, Esq.
GURSKY LAW ASSOCIATES
420 Scrabbletown Road, Suite C
North Kingston, RI 02852

/s/ Anna M. Piazza
Anna M. Piazza

786678v2-P

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NEHCEU, DISTRICT 1199<br>Plaintiff, | : | |
| vi. | : | C.A. No. 1:07-cv-00056-ML-LDA |
| HAVEN HEALTH CENTER<br>Defendant. | : | |

**DEFENDANT HAVEN HEALTH CENTER'S MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH ARBITRAL SUBPOENA DUCES TECUM**

## I. INTRODUCTION

This dispute erupted from a simple request from Defendant Haven Health Center ("Haven Health" or "Defendant") that the residents of its facility that it wishes to call in a patient abuse grievance arbitration be permitted to testify at the facility, rather than travel to downtown Providence where the arbitration was held. The residents are elderly. Plaintiff, NEHCEU, 1199 (the "Union" or "Plaintiff"), seized this opportunity to request the production of the entire medical file of all of the residents who wished to testify. Although it is axiomatic that arbitration proceedings do not conform to the discovery rules of traditional litigation, the Union insists that it would not be able to effectively cross-examine these witnesses without a thorough review all of their medical records.

Defendant submits that the Union's position is meritless for several reasons discussed in greater detail herein. Moreover, the entire purpose of the Union's Motion is to intimidate the witnesses and to conduct a fishing expedition in the hope that it will find information that could prevent the testimony of possibly sympathetic witnesses. Requiring these witnesses to produce their entire medical records prior to testifying at an

arbitration hearing, a burden that was not placed upon any other witness involved in the hearing, would be a manifest injustice and is entirely unnecessary. The Union's counsel may cross-examine these witnesses to discredit their credibility. As the Union's counsel virtually conceded at the arbitration hearing, he simply does not want to do so because he does not want to be put in a position where he has to challenge elderly witnesses. Accordingly, the Union has instead embarked on a fishing expedition to review their medical files in order to find some information which will disqualify the residents from testifying. Defendant respectfully requests that the Court see this Motion for what it is, at best a fishing expedition for irrelevant information, and at worst a tool to punish residents for registering complaints about its members and deny Plaintiff's Motion.

## II. <u>FACTUAL AND PROCEDURAL HISTORY</u>

Defendant owns and operates Haven Health Center of Pawtucket, Rhode Island. Haven Health is a 140-bed facility devoted to rehabilitation, recovery and long-term care. This dispute arose in the course of a grievance arbitration relating to the termination of Defendant's former employee, Annette Gray ("Gray"), in connection with allegations of mental abuse of Defendant's residents. Gray, a certified nursing assistant, was terminated from her employment after multiple residents complained that Gray mistreated them.

The arbitration was heard on October 10 and 11, 2006 at the Providence Westin before Arbitrator Marilyn Zuckerman. On October 6, 2006, Defendant's counsel sent correspondence to the Arbitrator and the Union stating that it intended to call Haven Health residents to testify at the arbitration hearing and requesting, as a matter of courtesy, that their testimony take place at the facility so that the elderly residents would

not be required to travel to downtown Providence. The Union strenuously objected to the request.

At the commencement of the Arbitration hearing on October 10, 2006, the matter was discussed. The Union stated its position that because the residents requested an accommodation in the form of their testimony location, their competency to testify should be examined, and thus, as a prerequisite to their right to testify, the Union should have access to their entire medical files. Haven Health refused to produce those records for the legal liability reasons that will be discussed in greater detail herein. Haven Health also took the position that the Union's demand for the residents' medical records contravened their basic right to testify in the same manner as every other witness involved in the arbitration and that they should not be subjected to pre-testimony scrutiny that other witnesses are not, solely because of their age and that they live in a long-term care facility. Haven Health believed that the Union's counsel is more than able to cross examine these witnesses in an effort to discredit their testimony in the same manner as any other witnesses involved in the arbitration. Further, the Arbitrator has the expertise to evaluate these witnesses' testimony and afford it the appropriate weight. Accordingly, Haven Health believes that there is absolutely no legitimate reason that the Union needs the residents' medical records.

On November 10, 2006, the Union served a subpoena *duces tecum* signed by the Arbitrator to counsel for Haven Health via facsimile. [A true and correct copy of the subpoena is attached hereto as Exhibit A]. The subpoena commands Haven Health to produce "*any and all medical records* pertaining to residents whom Haven Health Care intends to present as a witness and who were also identified at the arbitration."

(Emphasis added.) On or about November 13, 2006, counsel for Haven Health sent correspondence to the Union's counsel stating that absent a court order, it would not produce residents' medical files. To that end, on or about November 30, 2006, Haven Health filed a Motion to Quash the Subpoena with Arbitrator Zuckerman. On December 15, 2006, the Union filed its Reply to Haven Health's Motion to Quash.

On or about December 21, 2006, Arbitrator Zuckerman sent an email correspondence to the parties stating that any decision she might reach would not be self-enforcing, and recognizing that she had not ruled on the Motion to Quash. [A true and correct copy of Arbitrator Zuckerman's December 21, 2006 email is attached hereto as Exhibit B]. In response to Arbitrator Zuckerman's email, on or about January 5, 2007, counsel for Haven Health sent a letter to the Arbitrator and the Union, in care of the American Arbitration Association ("AAA"), stating that it understood that if the Motion to Quash were denied that the Union would still be required to seek enforcement of the subpoena through court intervention, and, thus, it declined to file additional memoranda with the Arbitrator and would wait for the Union's filing in state or federal court to compel production. [A true and correct copy of the January 5, 2007 correspondence to the AAA is attached hereto as Exhibit C].

On or about January 19, 2007, the Parties participated in a conference call with Arbitrator Zuckerman, wherein Haven Health reiterated its position that the Union should seek to compel compliance with the subpoena in court. Thus, on or about February 9, 2007, the Union filed the instant motion.

For the reasons set forth below, the Union's use of the subpoena is a transparent attempt to harass and intimidate the elderly residents who have courageously complained

about the abuse that they allege they have suffered at the hands of Gray. They should not be forced to open their entire medical history, a requirement to which no other witness involved in this entire arbitration is subjected, simply because they have asserted their rights to complain about their treatment at the hands of their caregivers. A ruling requiring the production of their medical records would surely have a chilling effect on future residents who wish to register complaints regarding their caregivers.

## III. ARGUMENT

### A. Medical Records Require Heightened Protection By the Courts.

Curiously, the Union fails to cite one case in its argument where a court ordered the enforcement of a subpoena of medical records to determine the competency of a witness to testify at an arbitration. Courts afford medical records heightened protection in discovery because of the privacy interests implicated in their disclosure. To that end, Rhode Island's legislature passed the Rhode Island Confidentiality of Health Care Information Act (the "Confidentiality Act"), R.I. Gen. Laws. §§ 5-37.3-1, *et seq.* The purpose of the Confidentiality Act is to establish safeguards for maintaining the integrity of confidential health care information that related to an individual. R.I. Gen. Laws § 5-37.3-2. The Act protects an individual's confidential health care records from disclosure to unauthorized third parties unless the disclosure falls within one of the limited statutory exceptions, which are inapplicable to the instant matter. *See Washburn v. Rite Aid Corp.*, 695 A.2d 495, 498 (R.I. 1997); *see also* R.I. Gen. Laws § 5-37.3-6.2 (confidential health care information is not subject to compulsory legal process in administrative proceedings).

Haven Health is subject to the provisions of the Act because it is a "health care provider" that provides "health care services" within the meaning of the Act. The Act defines a "health care provider" as "any person licensed by this state to provide or lawfully providing health care services…and any officer, employee, or agent of that provider acting in the course and scope of his or her employment or agency related to or supportive of health services." R.I. Gen. Laws § 5-37.3-(4). "'Health care services' means acts of diagnosis, treatment, medical evaluation, or counseling or any other acts that may be permissible under the health care licensing statutes of this state." R.I. Gen. Laws § 5-37.3-3(5). Because Haven Health is a licensed long-term care facility that provides physical and mental health services to its residents, it falls within the Act's purview.

In ruling on a motion to quash medical records, courts weigh the individual's privacy interests against the need for information set forth in the Confidentiality Act. The Confidentiality Act states in relevant part:

> The court shall grant a motion to quash unless the requesting party can demonstrate that there is reasonable ground to believe the information being sought is relevant to the proceedings, and the need for information clearly outweighs the privacy interests of the individual. R.I. Gen. Laws § 5-37.3-3-6.1(d).

The burden rests upon the party seeking to defeat a Motion to Quash to establish that the interests weigh in favor of disclosure. The Union fails to meet its burden, and requests information that is irrelevant.

The Union also fails to demonstrate that the confidential information it seeks is not available from another source. *See* R.I. Gen. Laws § 5-37.3-6.1(e)(6). The Union cannot satisfy this factor because the patients are subject to cross-examination when they testify.

The balancing test weighs in favor of protecting the residents' privacy. Enforcement of compliance with the subpoena would send the chilling message to every other elderly resident of a long term nursing facility that unless one is willing to open their entire medical files for review, one should not make a complaint against an employee who is subjecting them to continuous abuse. The Union's argument that "…if a resident felt so strongly about keeping their medical records confidential then he or she could refrain from testifying" (Union's Memorandum at p. 12) is outrageous. It also demonstrates a complete disregard of state and federal public policy of protecting individual's privacy interests and medical records. This facility is a traditional nursing home, and the residents involved live there because they are elderly. No other witness, including Gray, has been subject to such scrutiny. An order enforcing the subpoena for these purposes would deter any other resident from voicing allegations of abuse.

The Arbitrator lacks the authority to issue a subpoena seeking medical records that contravenes Rhode Island law prohibiting disclosure of such records. The Act obligates Haven Health to keep the medical information of its residents private and confidential. Haven Health does not have its residents' consent to disclose the records and none of the statutory exceptions allowing release of the records apply to this proceeding. *See* R.I. Gen. Laws § 5-37.3-4(b).

**B. The Union Should Not Be Permitted to Engage in Discovery that Contravenes the Entire Purpose of Arbitration.**

Parties participate in arbitration as an alternative to the more expensive and intensive litigation process in state and federal courts. Arbitration is a more informal process absent the rigorous discovery demand present in federal litigation. *Wilkes-Barre Co. v. Newspaper Guild of Wilkes-Barre, Local 120 et al.,* 559 F. Supp. 875, 881 (M.D.

Pa. 1982). The type of discovery the Union requests is totally inappropriate in the arbitration process. The Union is seeking medical records of witnesses in order to evaluate their competency to testify in front of an able-minded Arbitrator selected for her skills at evaluating evidence. No other witness involved in this Arbitration is subject to the same type of pre-testimony scrutiny. Notably, the Union fails to cite one legal authority in support of this proposition. The Union essentially concedes in its Memorandum that this is a fishing expedition. [See Union's Memorandum at p. 12, stating that "[T]he Union could not conduct a fishing expedition into the residents' entire medical histories at the arbitration hearing."]. It is unfathomable why the Union feels the need to conduct its "fishing expedition" at all. Its stated goals "(1) to determine their ability to comprehend what happened with Gray; and (2) the accuracy of their memory" should be subjected to the same scrutiny on cross-examination as every other witness'. (Union's Memorandum at p. 12).

The Union makes the nonsensical argument that Haven Health is at an unfair advantage because it has access to the medical records and can thus tailor its direct examination to hide any of these witnesses' weaknesses. (Union's Memorandum at pp. 12-13). In this arbitration, there is no discovery or depositions of witnesses. Thus, each side always has the advantage of being able to meet with its witnesses prior to the hearing to prepare for a direct examination and tailor its direct examination accordingly. The other party must cross-examine the witnesses without having deposed or likely having met the witnesses. Those are the discovery parameters upon which the parties to this arbitration have agreed. Thus, the Union's attempt to distinguish these witnesses from any other witness involved in this Arbitration is illogical.

**C. The Arbitrator's Signature on the Subpoena Does Not Indicate A Decision on the Enforceability Thereof.**

The Union's reliance on caselaw discussing deference to arbitrators' decisions is entirely misplaced and lacks a factual and legal basis. The Arbitrator did not rule on this dispute. To the contrary, as evidenced in her email to the parties, the Arbitrator had not reached a final decision on this issue. [See Exhibit B, stating that "[I]f the parties want me to consider all of the arguments and rule on the Motion, I will do so…"]. The Arbitrator never ruled on the Motion to Quash the subpoena and her signature on the subpoena is not a "decision" warranting deference from the courts. *See Wilkes-Barre Co., supra*. The Arbitrator's signature on the subpoena merely permits the Union to seek the information set forth therein. It is not a mandatory disclosure of any kind.

In its Memorandum of Law, the Union relies on cases discussing courts' deference to an arbitrator's "decision." (Union's Memorandum of Law at pp. 7-9). Even if the Court were to view the Arbitrator's signature as a "decision" regarding this dispute, it is not analogous to a final decision involving the interpretation of a collective bargaining agreement. Curiously, the cases cited by the Union in support of the proposition involve courts reviewing an arbitrator's final decision or award. None of those cases relate to the instant matter; that is, a case involving a subpoena issued by an arbitrator.

Finally, Haven Health objects to any characterization that the refusal to produce the medical records of the residents has been an issue of noncompliance. From the inception of this dispute, Haven Health has made clear that it believes that the subpoena is for an improper and irrelevant purpose and that it could not release the medical records absent a court order. Accordingly, any references to the "ample time" that Haven Health

has had to comply with the subpoena are irrelevant because Haven Health has been responsive to the Union and the Arbitrator's requests regarding this issue.

**D. The Subpoena is Overbroad.**

The Court should also deny the Union's motion because the subpoena is patently overbroad in that it seeks the entire medical files of these witnesses and requests information irrelevant to the arbitration. (See Exhibit A). "[T]he subject of a subpoena *duces tecum* must be specified with reasonable certainty, and there must be a substantial showing that … [the documents requested] contain evidence relevant and material to the issue." Central Soya Co. v. Henderson, 208 A.2d 110, 115 (R.I. 1965). "If the specification is so broad and indefinite as to be oppressive and in excess of the demandant's necessities, the subpoena is not sustainable." Id.

The request gives the Union an opportunity to peruse every record relating to the residents' medical history, regardless of whether it relates to their perceptive abilities. Such a request is an invasion of these residents' privacy and reinforces Haven Health's belief that the subpoena is a fishing expedition intended to disqualify and discourage these witnesses from testifying.

## IV. CONCLUSION

Based on the foregoing, the residents' privacy interests in their medical records outweigh the Union's alleged need for the information. Thus, enforcement of the subpoena seeking residents' medical records prior to allowing them to testify would result in a manifest injustice. Accordingly, Haven Health requests that the Union's Motion be denied.

HAVEN HEALTH CARE
By its attorneys,

/s/ Anna M. Piazza
Anna M. Piazza (#7206)
Matthew P. Horvitz (#7289)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600 (FAX)
apiazza@haslaw.com
mhorvitz@haslaw.com

Dated: March 2, 2007.

Stephen M. Sedor, Esq.
Rachel V. Kushel, Esq.
Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C.
1057 Broad Street
Bridgeport, CT 06604
(203) 366-3438
(203) 384-0317
ssedor@durantic.com
rkushel@durantic.com

OF COUNSEL

Dated: March 2, 2007.

**CERTIFICATION**

I hereby certify that on March 2, 2007, a copy of the foregoing Memorandum was filed electronically with the Court and notice was sent to counsel of record, as listed below, by operation of the Court's electronic filing system.

Marc B. Gursky, Esq.
GURSKY LAW ASSOCIATES
420 Scrabbletown Road, Suite C
North Kingston, RI 02852

/s/ Anna M. Piazza
Anna M. Piazza

786399